UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| FE Demolition and Remediation, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> New Mill Capital Holdings, LLC, 1200 North Logan, LLC, First United Bank and Trust Company, Unknown Owners, Non-Record Claimants, and Unknown Necessary Parties, <br><br> *Defendants*. | Case No.: 3:21-CV-3088 <br><br> Hon. Sue E. Myerscough <br><br> Mag. J. Karen L. McNaught |

### FE DEMOLITION AND REMEDIATION, LLC'S ANSWER TO NEW MILL CAPITAL HOLDINGS, LLC'S AFFIRMATIVE DEFENSES AND COUNTERCLAIM

Plaintiff, FE Demolition and Remediation, LLC ("FE Demolition"), by and through its undersigned counsel, Taft Stettinius & Hollister, LLP, answers Defendant, New Mill Capital Holdings, LLC's ("New Mill") Affirmative Defenses and Counterclaim as follows:

### ANSWER TO AFFIRMATIVE DEFENSES

1.  Plaintiff's sole claim against New Mill in Count IV fails for lack of an enforceable written contract.

    **ANSWER**: FE Demolition denies the allegations and legal conclusions in this affirmative defense.

2.  Plaintiff's sole claim against New Mill in Count IV is barred by Plaintiff's prior material breach of the alleged contract, as more fully set forth in the Counterclaims below.

    **ANSWER**: FE Demolition denies the allegations and legal conclusions in this affirmative defense.

73661949v2

3. Plaintiff's damages must be reduced or eliminated by Plaintiff's failure to take reasonable steps to mitigate its damages, including by not returning the rented equipment and not staffing employees on other jobs, among other reasons.

**ANSWER**: FE Demolition denies the allegations and legal conclusions in this affirmative defense.

4. Plaintiff's sole claim against New Mill in Count IV is barred because the discovery of hazardous materials at the Property rendered New Mill's continued performance of the contract impossible or commercially impracticable, thereby excusing all continued performance.

**ANSWER**: FE Demolition denies the allegations and legal conclusions in this affirmative defense.

5. Plaintiff's sole claim against New Mill in Count IV is barred on account of Plaintiff's negligence and unclean hands, as more fully set forth in the Counterclaims below.

**ANSWER**: FE Demolition denies the allegations and legal conclusions in this affirmative defense.

## ANSWER TO COUNTERCLAIMS

### GENERAL ALLEGATIONS

1. New Mill is a limited liability company organized under the laws of the State of Delaware.

**ANSWER**: FE Demolition lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1, and thus denies them.

2. FE Demolition is a limited liability company that does business in Illinois.

**ANSWER**: FE Demolition admits the allegations in Paragraph 2.

3. This Court has subject-matter jurisdiction over these Counterclaims under 28 U.S.C. § 1332(a)(1) because the parties are citizens of different States and the amount in controversy exceeds the sum or value of $75,000. The Court also has supplemental jurisdiction over these Counterclaims under 28 U.S.C. § 1367(a) because they are so related to claims that FE Demolition has asserted in the Second Amended Complaint, over which the Court has original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution.

**ANSWER**: FE Demolition admits the allegations in Paragraph 3.

### COUNT I – Negligence

6. [*sic*] In the summer and early fall of 2020, FE Demolition performed demolition and debris-removal services for New Mill at the location of a former glass container manufacturing plant in Logan County, Illinois, which is owned by New Mill's subsidiary, 1200 North Logan, LLC (the "Property").

**ANSWER**: FE Demolition admits the allegations in Paragraph 6 [*sic*].

7. FE Demolition owed New Mill a duty to exercise reasonable care when demolishing structures on the Property and removing the resulting debris.

**ANSWER**: Paragraph 7 states a legal conclusion to which no response is required. To the extent a response is required, FE Demolition denies the allegations in this paragraph.

8. FE Demolition failed to exercise reasonable care while demolishing structures and removing debris by, among other things, failing to cut metal in a manner such that the resulting sparks did not come in contact with flammable materials. Specifically, FE Demolition failed to remove from the area where it was cutting metal and creating sparks an industrial conveyor belt made of flammable materials.

**ANSWER**: The first sentence of Paragraph 8 states a legal conclusion to which no response is required. To the extent a response is required, FE Demolition denies the allegations in the first sentence. FE demolition denies the remaining allegations in Paragraph 8.

9. As a result of FE Demolition's negligence, sparks caused by FE cutting metal caused the conveyor belt inside the building to catch fire, which elicited a massive response from the local fire department and damage to the building.

**ANSWER**: FE Demolition denies the allegations in Paragraph 9.

10. New Mill expended substantial sums to repair and clean the building, including those associated with power washing the building to remove the soot, painting, and replacing broken windows, among other things.

**ANSWER**: FE Demolition lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10, and thus denies them.

11. The fire caused the City to inquire into whether the necessary permits had been pulled for the demolition work. It was determined that the permits had not been applied for, let

alone issued for the work. It was FE's obligation to secure the necessary permits before beginning demolition work.

**ANSWER**:   FE Demolition lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 11, and thus denies them. FE Demolition denies the remaining allegations in Paragraph 11.

12.   In addition, New Mill instructed FE Demolition at the outset of the engagement to set aside all copper wire and buss ducts that FE Demolition found during the demolition services so that New Mill could remove the materials with ease and do with them what it wished. FE Demolition therefore had a duty to set such materials aside for New Mill, rather than remove or bury them.

**ANSWER**:   The second sentence of Paragraph 12 states a legal conclusion to which no response is required. To the extent a response is required, FE Demolition denies the allegations in the second sentence. FE Demolition denies the remaining allegations in Paragraph 12.

13.   FE failed to exercise reasonable care during demolition services and buried or destroyed a significant amount of the copper wiring that it found during the demolition, telling New Mill that the copper was "in its way."

**ANSWER**:   Paragraph 13 states a legal conclusion to which no response is required. To the extent a response is required, FE Demolition denies the allegations in this paragraph.

14.   New Mill has suffered damages as the result of FE Demolition's breaches of its duties of care recited above.

**ANSWER**:   FE Demolition denies the allegations in Paragraph 14.

### COUNT II – Breach of Contract (contingent)

15.   New Mill restates its allegations above.

**ANSWER**:   FE Demolition repeats each of the responses to the allegations in the preceding paragraphs as if fully set forth herein.

16.   If it is later determined that New Mill and FE Demolition entered into a binding and enforceable contract for demolition services at the Property (as opposed to an agreement to agree), and that the May 6, 2020 Letter that is Exhibit B to the Second Amended Complaint sets

4

forth the terms of that contract, then FE Demolition breached the terms of that contract in several ways.

**ANSWER**: FE Demolition admits that the May 6, 2020 Letter constitutes a binding and enforceable contract, but denies that it breached the terms of that contract.

17. First, the May 6 letter states, on page 3, that "Fe will provide New Mill Capital all copper wire and buss ducts regardless of size found during the normal course of demolition operations. Fe will set aside all copper wire and buss ducts in an orderly staged stockpile for removal by New Mill Capital."

**ANSWER**: FE Demolition admits that Paragraph 17 accurately recites a portion of the contract.

18. FE breached this section of the May 6 letter in the following ways;

   a. In June 2020, shortly after beginning work, FE attempted to remove and take for itself copper wiring that it uncovered during the demolition. Copper is valuable on the resale market. New Mill caught FE attempting to steal the copper and threatened to kick it off the job site and terminate the contract, but did not do so at that time, reserving the right to do so later if necessary.

   b. Later, despite being reminded of the duty to set aside copper wiring for New Mill, instead of setting aside the wiring "in an orderly staged stockpile for removal by New Mill Capital," FE buried or destroyed the copper wiring, telling New Mill that it was "in its way."

**ANSWER**: FE Demolition denies the allegations in Paragraph 18.

19. Second, the May 6 letter states, on page 5, that "Fe will be responsible for all permit costs / fees associated with demolition."

**ANSWER**: FE Demolition admits that Paragraph 19 accurately recites a portion of the contract.

20. FE breached this section of the May 6 letter by failing to obtain the necessary permits for demolition before beginning work. The lack of permits was discovered only after the fire on the Property that FE caused, when the fire department responded and asked to see the permits and non were produced.

**ANSWER**: FE Demolition denies the allegations in Paragraph 20.

21.     Third, inherent in the May 6 letter is the promise by FE Demolition to perform all demolition services in a first class, good and workmanlike manner, and in accordance with generally accepted demolition practices adopted by firms performing services of a similar nature.

**ANSWER**:    Paragraph 21 states a legal conclusion to which no response is required. To the extent a response is required, FE Demolition denies the allegations in this paragraph.

22.     FE breached this provision of the May 6 letter when it started a fire in one of the buildings by cutting metal in close proximity to flammable material, whereby sparks from the cutting process came in contact with the flammable material.

**ANSWER**:    FE Demolition denies the allegations in Paragraph 22.

23.     Fourth, The [*sic*] May 6 letter specifically excluded from the scope of FE's proposed work "all management of environmental materials and any hazardous waste."

**ANSWER**:    FE Demolition admits that Paragraph 23 accurately recites a portion of the contract.

24.     FE breached this provision of the May 6 letter when, after some of the scrap metal removed from the Property tripped radiation monitors at the scrap yard, FE, despite being told to stop work [*sic*] all demolition work, sent in a team of its own environmental consultants to the Property to take samples for evaluation.

**ANSWER**:    FE Demolition denies the allegations in Paragraph 24.

25.     New Mill told FE that this was unacceptable, told the individuals to leave and not return, and reiterated that New Mill would handle all environmental aspects of the Property. FE Demolition later sent letters to New Mill which New Mill reasonably believed to be threats to file a costly environmental lawsuit against New Mill.

**ANSWER**:    FE Demolition denies the allegations in Paragraph 25.

26.     Each one of these [*sic*] FE's breaches of the assumed contract was material, entitled New Mill to terminate the contract with no further liability to FE demolition [*sic*], and caused New Mill to incur additional expenses and damages for which FE is responsible.

**ANSWER**:    Paragraph 26 states a legal conclusion to which no response is required. To the extent a response is required, FE Demolition denies the allegations in this paragraph.

73661949v2

27. Consequently, New Mill was entitled to terminate the assumed contract and to sue for damages caused by FE Demolition's breaches.

**ANSWER**: Paragraph 27 states a legal conclusion to which no response is required. To the extent a response is required, FE Demolition denies the allegations in this paragraph.

Dated: May 20, 2022                                             Respectfully submitted,

**FE DEMOLITION AND REMEDIATION, LLC**

By: /s/ *John M. Riccione*
One of Its Attorneys

John M. Riccione, Esq. (ARDC#6209375)
jriccione@taftlaw.com
Adam W. Decker, Esq. (ARDC#6332612)
adecker@taftlaw.com
TAFT STETTINIUS & HOLLISTER, LLP
111 E. Wacker Dr., Suite 2800
Chicago, Illinois 60601
Telephone: (312) 527–4000

7

73661949v2

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 20, 2022, a true and correct copy of ***FE DEMOLITION and Remediation, LLC's Answer to New Mill Capital Holdings, LLC's Affirmative Defenses and Counterclaim*** was served upon the following counsel of record through the Court's CM/ECF system, and via email:

>Rodney L. Lewis
>Polsinelli P.C.
>150 N. Riverside Plaza, Suite 3000
>Chicago, IL 60606
>Tel.: (312) 819-1900
>rodneylewis@polsinelli.com
>
>Britton L. St. Onge
>Polsinelli P.C.
>100 S. Fourth Street, Suite 1000
>St. Louis, MO 63102
>Tel.: (314) 231-1776
>bstonge@polsinelli.com

/s/ <i>John M. Riccione</i>